STATE OF IOWA, Appellant, v. EDWARD JINKENS, Appellee.

**WIFE DESERTION:** Jury Question. A jury question, on the issue
1 whether a husband had deserted his wife, arises on testimony tending to show: (1) .That the husband married the wife in bad faith; (2) that he took his wife to a foreign state, and, after a short experience in business, caused her to return to the home of her parents in this state, under an agreement that

he would soon return to the same place and provide for her; and (3) that he did so return, but refused, for a period of some three months, to go to his wife, or to speak to or provide for her.

**WIFE DESERTION:** Venue. The venue in a prosecution for de-
2   sertion by the husband of his wife may be laid in the county in this state in which the husband and wife had, at the husband's instigation, mutually agreed to live, and in which they did live, and in which he refused to provide for her; and this is true even though it be conceded that the husband retained a legal residence in a foreign state.

*Appeal from. Davis District Court.*—SENECA CORNELL, Judge.

NOVEMBER 1, 1920.

THE State appeals from order directing verdict for defendant. The facts are stated in the opinion.—*Reversed.*

*H. M. Havner,* Attorney General, *B. J. Powers,* Assistant Attorney General, and *T. A. Goodson,* County Attorney, for appellant.

*Wm. M. Walker, H. C. Taylor,* and *Buell McCash,* for appellee.

· ARTHUR, J.—Defendant was indicted May 7, 1917, under Section 4764 of the Code, charging that defendant "did unlawfully, willfully, and designedly marry one Lottie Burrows, for the purpose of escaping a prosecu-
1. WIFE DE-     tion for the crime of seduction, committed
SERTION:
jury ques-     against the said Lottie Burrows; and while
tion.
said charge was pending, he married her, the said Lottie Burrows, for the purpose of escaping prosecution for said crime of seduction, and thereafter without good and just cause deserted her."

On the trial, the State produced evidence tending to show that, on September 7, 1916, information was filed in

justice court, charging defendant with seduction of Lottie
Burrows, prosecutrix in this action; that the defendant
was arrested, and brought into court the following day;
was arraigned; entered plea of not guilty; gave bond for
appearance; and the case was set down for hearing four
days later. When the case came on for hearing, defendant
appeared, with counsel, and hearing was postponed, from
time to time, until September 20th. Defendant and pros-
ecutrix were married on September 18th, and the charge
of seduction was dismissed. A few days before his arrest,
Jinkens went to the Burrows home, and talked with Lottie
about her condition and what they should do about it, and
also talked with Mrs. Mary Burrows, Lottie's mother.
Jinkens and Lottie called Mrs. Burrows into the room
where they were, to talk the matter over with them. Jink-
ens said he had "got Lottie into trouble." Mrs. Jinkens
asked him if he was going to marry Lottie, and he said:

"I will never marry her nor live with her. The only
thing I will do, I will take her to Ottumwa to a doctor, and
she would be operated on."

He did take her to Ottumwa, the evening of the day
that he said he would take her, but he was arrested on
the seduction charge that same evening, immediately upon
their arrival in Ottumwa. In about a week after his ar-
rest, and near the time set for his preliminary hearing on
the seduction charge, he again went to the Burrows home,
where Lottie and her mother were, and talked about marry-
ing Lottie, and called several times and talked about the
same subject, and finally brought his lawyer with him, and
secured the written consent of the parents to the marriage,
—Lottie being under 18,—and the marriage took place on
September 18, 1916. After the marriage, they lived about
two weeks with Lottie's parents, and then they went to
Luray, Missouri, and ran a small restaurant, for about six
weeks. Then he told her that the restaurant was not
paying, and that, he had a buyer for it and would sell, and
for her to go and stay with her folks, until he sold the
restaurant, and that he would get a position in Iowa, and

come after her. They agreed to that arrangement. He gave her money to return to her folks, and, shortly afterwards, shipped their household effects to Milton, Iowa. She arrived at the home of her parents, which is two or three miles out of the little town of Milton, in Davis County, Iowa, on Monday; and, on Thursday of the same week, defendant appeared in Milton, but did not visit his wife. She saw him in Milton, and he saw her; she attempted to have a talk with him, but he avoided her. During the six weeks they were in Missouri, he treated her badly. endeavored to provoke her to leave him, and asked her to leave him. She told him she would not leave him. After returning to Iowa, she remained at the home of her parents, and a child was born there, February 13, 1917. A few days after the baby was born, this action for wife desertion was commenced in justice court, and Jinkens was arrested at Milton, Iowa, on February 18, 1917.

The record is silent as to whether or not defendant remained in Davis County from about November 24, 1916, when prosecutrix saw him in Milton, until his arrest in Milton, on February 18, 1917. Jinkens escaped from the sheriff, and was not found until January, 1918, when he was arrested as a fugitive in Denver, Colorado, and returned to Davis County, Iowa.

When the State had submitted the foregoing facts and rested, the court, on motion of the defendant, directed a verdict in his favor, and he was discharged.

The offense charged is defined in Section 4764 of the Code, and reads:

"Every man who shall marry any woman for the purpose of escaping prosecution for seduction, and shall afterwards desert her without good cause, shall be deemed guilty of a misdemeanor and shall be punished accordingly."

There is no question but that the facts disclosed by the evidence establish conclusively that defendant married prosecutrix to escape prosecution on the charge of seduction then pending against him. It is evident that he did not enter the marriage ceremony in good faith. He re-

fused to marry her, and proposed an abortion, instead of marriage, and did attempt to carry out his wicked scheme, and was prevented by arrest on the charge of seduction. It was only after his arrest, and when the preliminary hearing was almost reached, that he, in fear of prosecution, concluded to marry her. That element of the charge, that defendant married prosecutrix for the purpose of escaping prosecution for seduction, does not require further consideration.

The trial court evidently concluded that his court was without jurisdiction, because the desertion element of the offense, if desertion was established, occurred, not in Iowa, but in Missouri. And that is the pertinent inquiry in this case.

2. WIFE
DESERTION:
venue.

We think it may be said, from the evidence, that defendant did desert his wife, and that such desertion was without good cause, and in pursuance of a purpose and design to desert her, formed at the time of the marriage. Anyway, it cannot be said, as a matter of law, that he did not so desert her.

Now, where did the desertion occur? The first two weeks after the marriage, defendant and his wife lived at the home of her parents; lived there until he found some place to engage in business,—not an unusual occurrence.

Then they went to Luray, Missouri, and conducted a restaurant. Both worked in the restaurant, and lived in rented rooms. That way of working and living continued about six weeks, and then defendant told his wife that their restaurant business was not paying; and that he would sell it; and that they would return to Iowa; and for her to go to her folks and remain with them until he could close out the business; and that he would join her, and find employment in Iowa; and that he would come and get her; that he thought he would find a place in Keokuk to work; and that they would go there to live. They agreed to that arrangement; she did what he asked her to do, went to the home of her parents, and awaited his coming. In pursuance of such arrangement, he furnished her trans-

portation to go to Iowa, and, later, shipped their household effects to her, and paid the freight on them. Later, in four days, he arrived in Milton, Iowa, as he had agreed with her that he would. Whatever willful design and purpose he may have entertained at the time of the marriage, and harbored all along, during approximately two months, of deserting this woman, up to that time he had not abandoned her, nor left her unprovided for. It can scarcely be said, from any overt acts or omissions of his, that he had deserted her up to the time of his arrival in Davis County, in pursuance of the arrangement between them that she would precede him to Iowa, and that he would follow and join her later, and procure employment in Iowa, and they would be together again. Upon his arrival in Milton, Davis County, she saw him in a barber shop, and he saw her; she sought to meet and talk with him, but he avoided meeting her, and did not come to get her, at her parents' home, as he had promised her he would.

We think the evidence would have supported a finding by the jury that the desertion took place in Davis County, after defendant came out· of Missouri up to Milton, as he agreed with his wife to do., and then and there failed to take her to him, and neglected and refused, by his acts of omission, to maintain or provide for his wife.

If material, it was a question of fact for the jury to say whether defendant gained a residence in Missouri, or remained a resident of Iowa, and was only in Missouri temporarily. The evidence, we think, would have sufficiently supported a finding by the jury that defendant did not intend to permanently leave Davis County, and did not intend, in good faith, to take up a residence in Luray, Missouri, and make a home there for himself and wife, and that he remained a resident of Davis County, Iowa. However, we do not think the venue necessarily depends on whether he gained a residence in Missouri or not. Defendant and his wife had agreed upon returning to Davis County, and she did return, and he followed, as they had agreed; but, when he arrived in Davis County, he failed and

refused to proceed further with his agreement to maintain and provide for her. It was defendant's duty to join his wife at the place where she had gone, at his request, and take her to him, and provide for her in Iowa, as he had agreed. Supporting this conclusion, see *State v. Dvoracek*, 140 Iowa 266. In the *Dvoracek* case, this court said:

"The venue is in the county where the duty of providing for the wife and children should be discharged."

The case should have gone to the jury, and the jury should have been permitted to find whether the venue was laid, together with other material matters in the submission of the case.

The defendant has been discharged, and cannot again be brought to trial under this indictment. Our duty ends with this disapproval of the court's ruling.—*Reversed*.

WEAVER, C. J., LADD and STEVENS, JJ., concur.